Slip Op. 17- 49

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ARCELORMITTAL USA LLC, <br><br> Plaintiff, <br><br> and <br><br> AK STREET CORPORATION, <br> NUCOR CORPORATION, and <br> UNITED STATES STEEL CORPORATION, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> PAO SEVERSTAL and <br> SEVERSTAL EXPORT GMBH, <br><br> Defendant-Intervenors. | Before: Gary S. Katzmann, Judge <br><br> Court No. 16-00168 |

## <u>OPINION</u>

[Defendant's Motion to Dismiss is granted. Defendant-intervenors' cross-claim is dismissed without prejudice.]

Dated:  April 25, 2017

<u>Brooke Ringel</u>, Kelly Drye & Warren, LLP, of Washington, DC, argued for plaintiff.

<u>Renee A. Burbank</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With her on the brief were <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.  Of counsel on the brief was <u>Michael T. Gagain</u>, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC. Of counsel, <u>Lydia Pardini</u>, Attorney, Office of the Chief Counsel

for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC, argued for defendant.

Daniel J. Cannistra and Benjamin Blase Caryl, Crowell & Moring LLP, of Washington, DC, argued for defendant-intervenors.

Katzmann, Judge:  This case poses the question of whether a foreign exporter and producer, having obtained a de minimis subsidy rate in an investigation by the U.S. Department of Commerce ("Commerce"), and not being subject to a countervailing duty ("CVD") order, nonetheless has standing to challenge by cross-claim Commerce's application of Adverse Facts Available ("AFA") to calculate that subsidy rate.  Put another way, where a party ultimately prevails at the administrative level in Commerce's investigation, must its challenge to that proceeding fail because there is no case or controversy and thus no jurisdiction lies?

This matter is before the court on defendant United States' ("the Government") Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction defendant-intervenors PAO Severstal and Severstal Export GmbH's (collectively "Severstal") cross-claim.  Def.'s Mot. Dismiss for Lack of Jurisdiction, Dec. 2, 2016, ECF No. 35 ("Def.'s Mot."); Def.-Inter.'s Cross-cl., Oct. 14, 2016, ECF No. 20 ("Cross-cl.").  Severstal, a foreign exporter and producer of cold-rolled steel flat products from Russia, cross-claimed to challenge certain factual findings and legal conclusions upon which Commerce's final determination in the CVD investigation of certain cold-rolled steel flat products from the Russian Federation ("Russia") is based.  Countervailing Duty investigation of Certain Cold-Rolled Steel Flat Products From the Russian Federation:  Final Affirmative Countervailing Duty Determination and Final Negative Critical Circumstances Determination, 81 Fed. Reg. 49,935 (Dep't Commerce July 29, 2016) ("Final Determination") and the accompanying July 20, 2016 Issues and Decision Memorandum, C–821–823 ("IDM").  Severstal

claims jurisdiction over its cross-claim is proper pursuant to 28 U.S.C. §§ 1581(c) and 1583, and that it has standing to bring the cross-claim as an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3) (2012).[1]  Cross-cl. ¶¶ 1–3.  For the reasons set forth below, the court finds that it lacks subject matter jurisdiction to hear Severstal's cross-claim and grants defendant's motion to dismiss without prejudice.

## BACKGROUND

On July 28, 2015, Commerce received CVD petitions concerning imports of certain cold-rolled steel flat products from Brazil, India, the People's Republic of China, the Republic of Korea, and the Russian Federation, filed on behalf of domestic industry by five United States producers of certain cold-rolled steel flat products -- ArcelorMittal USA EEC ("ArcelorMittal"),[2] AK Steel Corporation, Nucor Corporation, United States Steel Corporation, and Steel Dynamics, Inc. -- the first four of whom now appear as parties in this proceeding.[3]  Certain Cold-Rolled Steel Flat Products From Brazil, India, the People's Republic of China, the Republic of Korea, and the Russian Federation: Initiation of Countervailing Duty Investigations, 80 Fed. Reg. 51,206 (Dep't Commerce Aug. 24, 2015) (initiation of CVD investigation).  The petition alleged that the Government of Russia "provid[ed] countervailable subsidies . . . to imports of cold rolled steel

---

[1] Further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2012 edition, and all applicable supplements thereto, unless otherwise noted.

[2] Referred to in later stages of the CVD investigation as "ArcelorMittal USA LLC."  See Final Determination n.7.

[3] ArcelorMittal filed its summons on August 25, 2016.  ECF No. 20.  AK Steel Corporation, Nucor Corporation, and United States Steel Corporation were granted plaintiff-intervenor status on October 17, 19, and 27, respectively.  ECF Nos. 21, 26, 31.

from . . . Russia . . . and that such imports are materially injuring, or threatening material injury

to, an industry in the United States." Id.  Based on its review of the petition, Commerce found

there was sufficient information to initiate a CVD investigation on 10 of the 14 alleged programs

in the petition, including the "deduction of the R & D exploration costs from the company's taxable

income." Id. at 51,209; August 17, 2015 Countervailing Duty Initiation Checklist at 11–12.

Accordingly, Commerce published a notice of initiation of a countervailing duty investigation of

certain cold-rolled steel flat products from Russia on August 24, 2015.  80 Fed. Reg. at 51,209;

see 19 U.S.C. § 1671a(b).   The period of investigation ("POI") was January 1, 2014, through

December 31, 2014.  80 Fed. Reg. 51,206.  On September 14, 2015, Commerce selected Severstal

as one of two mandatory respondents in the investigation.[4]  Memorandum from Kristen Johnson,

International Trade Compliance Analyst, Office III, Antidumping and Countervailing Duty

Operations to Christian Marsh, Deputy Assistant Secretary for Antidumping and Countervailing

Duty Operations, "Countervailing Duty Investigation on Certain Cold-Rolled Steel Flat Products

from the Russian Federation: Selection of Mandatory Respondents" at 5 (Sept. 14, 2015).

---

[4]         The selected mandatory company respondents in this investigation
are Novolipetsk Steel OJSC (NLMK), Novex Trading (Swiss) S.A.
(Novex Trading), Altai-Koks OJSC, Dolomite OJSC, Stoilensky
OJSC, Studenovskaya (Stagdok) OJSC, Trading House LLC,
Vtorchermet NLMK LLC, Vtorchermet OJSC, and Vtorchermet
NLMK Center LLC (collectively, the NLMK Companies) and PAO
Severstal, Severstal Export GmbH, JSC Karelsky Okatysh, AO
OLKON, AO Vorkutaugol, and JSC Vtorchermet (collectively, the
Severstal Companies).

IDM at 2.

Commerce issued its Preliminary Determination on December 22, 2015, finding that Severstal received countervailable subsidies from the Government of Russia in the form of the tax deduction for exploration expenses program under Article 261 of the Tax Code of the Russian Federation ("TCRF"), and calculating a 0.01 percent ad valorem (de minimis) overall subsidy rate for Severstal.  Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products From the Russian Federation:  Preliminary Affirmative Countervailing Duty Determination, 80 Fed. Reg. 79,564 (preliminary determination); Preliminary Issues and Decision Memorandum, C-821-823 (Dec. 15, 2015).  Commerce found in the Preliminary Determination that Severstal "reported deducting exploration expenses defined in Article 261 in the 2013 income tax return, which was filed with the tax authorities during the POI."   Preliminary Issues and Decision Memorandum at 20.

On July 29, 2016, Commerce issued its affirmative Final Determination, in which it continued to find that countervailable subsidies were being provided to producers and exporters of certain cold-rolled steel flat products from Russia during the POI.  Commerce explained that during Severstal's verification, "verifiers discovered previously unreported deductions contained in line item 040 [of its 2013 tax return] that related to exploration activities" under Article 261 of the TCRF.[5]  IDM at 124.  The agency accordingly found that "neither the Government of Russia nor [Severstal] acted to the best of their ability in responding to the Department's requests for

---

[5] Commerce stated that "in the Preliminary Determination, we inadvertently treated the extraction tax reductions the Severstal Companies received under Article 342 of the TCRF as having been received under the Tax Deduction for Exploration Expenses program, as provided under the Article 261 of the TCRF."  IDM at 123.

certain information," and "drew an adverse inference where appropriate in selecting from among the facts otherwise available," pursuant to 19 U.S.C. § 1677e.  Final Determination at 49,935. Thus Commerce assigned to Severstal an AFA rate of 0.03 percent ad valorem and calculated a final countervailable subsidy rate of 0.62 percent ad valorem (de minimis) for Severstal.[6] Final Determination at 49,936; IDM at 15, 21, 126.

Commerce noted that "[i]f the U.S. International Trade Commission (ITC) issues a final affirmative injury determination, we will issue a CVD order and will reinstate the suspension of liquidation . . . and will require a cash deposit of estimated CVDs for such entries of subject merchandise in the amounts indicated above." Final Determination at 49,936.  On the other hand, "[i]f the ITC determines that material injury, or threat of material injury, does not exist, this proceeding will be terminated and all estimated duties deposited as a result of the suspension of liquidation will be refunded or canceled."  Id.  Commerce notified the ITC of its determination in accordance with 19 U.S.C. § 1671d(d).  Id.

ArcelorMittal filed suit on August 25, 2016, challenging Commerce's Final Determination as unsupported by substantial evidence and otherwise not in accordance with law as a result of the agency's assignment of a 0.03 percent ad valorem subsidy rate to Severstal, and seeking remand. Pl.'s Sum. ECF No. 1; Pl.'s Compl., ECF No. 8 (Sep. 23, 2016).  On September 16, 2016, the ITC determined that "imports of cold-rolled steel flat products from Russia that are sold in the United States at [less than fair value] and subsidized by the government of Russia are negligible" and

---

[6] NLMK received an above-de minimis rate of 6.95 percent ad valorem.  Pursuant to 19 U.S.C. §§ 1671d(c)(1)(B)(i)(I), (5)(A), this became the all-others rate as well.  Final Determination at 49,936.

terminated the investigations. <u>Cold-Rolled Steel Flat Products From Brazil, India, Korea, Russia, and the United Kingdom</u>, 81 Fed. Reg. 63,806 (ITC Sep. 16, 2016) (final determination); <u>Cold-Rolled Steel Flat Products From Brazil, India, Korea, Russia, and the United Kingdom</u>, USITC Pub. 4637, USITC Inv. Nos. 701-TA-540, 542-544 and 731-TA-1283, 1285, 1287, and 1289-1290 (Sep. 2016); <u>see</u> 19 U.S.C. § 1671d(b)(1). As a result, no CVD order was issued as to Russian importers of cold-rolled steel flat products.

Severstal intervened as a defendant-intervenor on October 3, 2016, and cross-claimed on October 14, challenging as unsupported by substantial record evidence and otherwise not in accordance with law Commerce's application of AFA to calculate Severstal's benefit under the tax deduction for exploration expenses program. Def.-Inter.'s Consent Mot. to Intervene, ECF No. 10; Cross-cl. ¶¶ 19–24.[7]

The Government moved under Rule 12(b)(1) of this Court to dismiss Severstal's cross-claim for lack of jurisdiction. Def.'s Mot.; USCIT R. 12(b)(1). Severstal responded on January 9, 2017, and the Government replied on January 30. Def.-Inter.'s Opp'n., ECF No. 44 ("Def.-Inter.'s Opp'n"); Def.'s Reply, ECF No. 48 ("Def.'s Reply").

_____

[7] In a separate action before this court, Severstal, as plaintiff, challenges certain factual findings and legal conclusions made by Commerce in the <u>Final Determination</u>. <u>See</u> <u>Severstal Export GmbH v. United States</u>, 16-cv-00172 (2016). Count 4 of Severstal's complaint in that action is essentially identical to its sole Count in the instant cross-claim, both challenging Commerce's determination to apply AFA in calculating the benefit from the tax deduction for exploration expenses subsidy program. <u>Id.</u>; Cross-cl. ¶¶ 19–24. The Government, as defendant, has moved to dismiss this action in its entirety. In an opinion issued contemporaneously with the instant one, this court allows the Government's motion to dismiss without prejudice, determining that Severstal has failed to establish a justiciable "case or controversy." <u>See</u> <u>Severstal Export GmbH v. United States</u>, 41 CIT __, Slip Op. 17-50 (April 25, 2017).

Defendant argues that Severstal, having obtained a de minimis subsidy rate in Commerce's investigation, and not being subject to any CVD order, cannot show injury in fact, and thus lacks standing to cross-claim against the defendant.  Def.'s Mot. at 2–6.  Assuming that Severstal has constitutional standing, the Government argues that Severstal's cross-claim should be dismissed because it impermissibly expands the issues in dispute between ArcelorMittal and the Government.

## JURISDICTION AND STANDARD OF REVIEW

The party seeking to invoke the Court's jurisdiction carries the burden of establishing that subject matter jurisdiction lies.  Nat'l Presto Indus., Inc. v. Dazey Corp., 107 F.3d 1576, 1580 (Fed. Cir. 1997).  This burden extends to each cause of action asserted, and to parties asserting cross-claims.  DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318–19 (Fed. Cir. 2006); see Washington Red Raspberry Com. v. United States, 11 CIT 173, 183–84, 657 F. Supp. 537, 545–46 (1987).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety."  Arbaugh v. Y&H Corp., 546 U.S. 500, 502 (2006), quoted in Nitek Elec., Inc. v. United States, 36 CIT ____, ____, 844 F. Supp. 2d 1298, 1302 (2012), aff'd, 806 F.3d 1376 (Fed. Cir. 2015).

In deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court "accepts as true all uncontroverted factual allegations in the complaint," Nitek Elec., 844 F. Supp. 2d at 1302 (citing Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011)), and draws all reasonable inferences in the complainant's favor.  Carl v. U.S. Sec'y of Agric., 36 CIT ____, ____, 839 F. Supp. 2d 1351, 1352 (2012) (citing Cedars–Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).

## DISCUSSION

## I.     SUBJECT MATTER JURISDICTION

Severstal submits that the Court possesses exclusive jurisdiction to entertain its cross-claim pursuant to 28 U.S.C. §§ 1581(c) and 1583.  Cross-cl. ¶ 1.  Severstal also alleges that it has standing as an interested party within the meaning of 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3), having participated fully in the underlying countervailing duty investigation at issue.  Id.  In its Response to the Government's motion to dismiss, Severstal invokes additional support for its statutory standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2636(c).[8]  Def.-Inter.'s Opp'n at 7–8. The Government does not take issue with Severstal's status as an interested party who participated fully in the underlying proceeding, but rather contests Severstal's standing under the United States Constitution, specifically regarding the necessary presence of an injury in fact.  Def.'s Mot. at 3–6; Def.'s Reply at 2–5.

The jurisdiction of Federal Courts is limited to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "A necessary component of establishing a case or controversy pursuant to Article III is standing."  Royal Thai Gov't v. United States, 38 CIT ____, ____ 978 F. Supp. 2d 1330, 1333 (2014) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.")).  To establish standing, the claimant must show an "injury in fact" that is "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical."  Royal Thai, 978

---

[8] The Government notes that "Defendant-Intervenors do not invoke these provisions in their cross-claim."  Def.'s Reply at 2.

F. Supp. 2d at 1333 (quoting Lujan, 504 U.S. at 560).  Additionally, the claimant must demonstrate that the injury is "fairly traceable to the challenged action" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id. (quoting Lujan, 504 U.S. at 560–61).

The U.S. Court of Appeals for the Federal Circuit and this Court have held that when a respondent challenges an administrative proceeding in which it has prevailed, there is no case or controversy, and thus no jurisdiction lies.  Zhanjiang Guolian Aquatic Prod. Co. v. United States, 38 CIT ____, ____, 991 F. Supp. 2d 1339, 1342 (2014) (citing Royal Thai, 978 F. Supp. 2d at 1333); see Rose Bearings Ltd. v. United States, 14 CIT 801, 802–03, 751 F.Supp. 1545, 1546–47 (1990); see also Freeport Minerals Co. v. United States, 758 F.2d 629, 634 (Fed. Cir. 1985).  Because Commerce assigned Severstal a de minimis subsidy rate, Severstal prevailed as a respondent in the underlying proceeding.  A de minimis subsidy rate removes a respondent from payment obligations under a relevant CVD order.  "In making a determination under this subsection, [Commerce] shall disregard any countervailable subsidy rate that is de minimis . . . ." 19 U.S.C. § 1671d(a)(3); see 19 U.S.C. § 1671b(b)(4); 19 C.F.R. § 351.204(e)(1) (2016) ("The Secretary will exclude from an . . . order under [19 U.S.C. § 1671e] . . . any exporter or producer for which the Secretary determines an individual weighted-average dumping margin or individual net countervailable subsidy rate of zero or de minimis.").  Further, the ITC determined that imports of subsidized steel from Russia were negligible, resulting in the termination of the CVD investigation without the issuance of a CVD order.  See Royal Thai, 978 F. Supp. 2d at 1333 ("The lack of a CVD order means that plaintiff is currently not suffering any actual or imminent injury in fact due to any alleged errors committed by Commerce.") (citing Lujan, 504 U.S. at 560); see

also Zhanjiang, 991 F. Supp. 2d at 1342 ("[T]he fact that no CVD order has been issued means

that Plaintiff is not suffering any injury due to the errors it alleges the ITC committed.");

19 U.S.C. § 1671d(c)(2)(B) (mandating that cash deposits be refunded and the relevant

investigation be terminated in the event that either Commerce or the ITC makes a negative final

injury determination).   Severstal's disagreement with Commerce's AFA application in the

underlying proceeding does not overcome the reality that it has not been injured by Commerce's

Final Determination.  "[A] prevailing party may not appeal an administrative determination merely

because it disagrees with some of the findings or reasoning."  Royal Thai, 978 F. Supp. 2d at 1333

(quoting Rose Bearings, 14 CIT at 803).

      Severstal contends that "[t]he specific injury that is imminent . . . is receiving an above-de

minimis countervailing duty rate on remand and not being able to challenge the factual findings

and legal conclusions contained in Commerce's final determination."  Def.-Inter.'s Opp'n at 9.[9]

The court addresses these alleged injuries in turn.

---

[9] The Government observes, correctly, that it is not necessarily the case that "defendant-intervenors
must forever abandon their objections."  Def.'s Mot. at 6.  It notes that

> ArcelorMittal USA LLC, a domestic producer, is challenging the de
> minimis countervailable subsidy margin determined for defendant-
> intervenors, and defendant-intervenors have been granted leave to
> participate in this case.  If plaintiff prevails before this Court,
> "Commerce will be required to publish a redetermination on
> remand" and defendant-intervenors "will still have a right to
> challenge that redetermination," for example, by filing a new
> lawsuit.  Royal Thai, 978 F. Supp. 2d at 1334.

Def.'s Mot. at 6.

This court does not discern merit in Severstal's claim regarding injury.  The possibility of receiving an above-<u>de minimis</u> countervailing duty rate on remand fails to constitute an injury in fact, as several hypothetical events would need to occur before Severstal would be required to post cash deposits or pay countervailing duties.  Plaintiff ArcelorMittal would first need to succeed in obtaining remand in this proceeding.   Commerce would then need to calculate an above-<u>de minimis</u> countervailing duty rate for Severstal on remand.   This is the event that Severstal characterizes as an imminent injury.  Even at this step, however, Severstal would not be subject to a CVD order, unless the ITC had also reversed its negative injury determination.  This chain of hypothetical outcomes cannot be said to be imminent.   "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes . . . ."  <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. ____, ____, 133 S. Ct. 1138, 1147 (2013) (citing <u>Lujan</u>, 504 U.S. at 565, n.2).  Severstal's desired outcome of a remand would not remediate any actual or imminent injury.  <u>See</u> <u>Lujan</u>, 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (citing <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 41 (1976)) (internal quotation marks omitted).   "[W]hen a plaintiff merely alleges 'hypothetical harm,' the court must dismiss the case."  <u>Royal Thai</u>, 978 F. Supp. 2d at 1333 (citing <u>Asahi Seiko Co. v. United States</u>, 35 CIT ____, ____, 755 F. Supp. 2d 1316, 1322 (2011)).  Attempts by this court to reconcile Severstal's hypothetical harm would thus constitute an impermissible advisory opinion. <u>Zhanjiang</u>, 991 F. Supp. 2d at 1343 ("[T]he United States Constitution does not permit courts to issue advisory opinions.") (citing <u>Camreta v. Greene</u>, 563 U.S. 692, 717 (2011)); <u>Royal Thai</u>, 978 F. Supp. 2d at 1333 ("[A]ny discussion by the court regarding such potential harm would be an

impermissible advisory opinion.") (citing <u>Georgetown Steel Corp. v. United States</u>, 16 CIT 1084, 1087–88, 810 F. Supp. 318, 322 (1992)).

Severstal's second alleged injury—the loss of the ability "to appeal the factual findings, legal conclusions, and determinations made in Commerce's original final determination" if it does not bring this claim now—is likewise unavailing.  Def.-Inter.'s Opp'n at 9.  Severstal is incorrect under the statutory framework.  Were Severstal to receive an above-<u>de minimis</u> rate, and ultimately be subject to a CVD order following the ITC's reversal of its negligibility determination, then Severstal would be injured in fact.  Per 19 U.S.C. § 1516a(a)(2)(i)(II), Severstal could challenge this outcome by filing a summons "within thirty days after . . . the date of publication in the Federal Register of . . . a countervailing duty order based upon any determination in clause (i) of subparagraph (B)" of that provision.  Specifically, 19 U.S.C. § 1516a(a)(2)(B)(i) refers to "[f]inal affirmative determinations by [Commerce]."  Severstal could therefore bring a claim challenging elements of Commerce's final affirmative determination upon the publication of a CVD order to which it is subject.  Such challenges could target Commerce's application of AFA to Severstal, and other relevant portions of Commerce's existing <u>Final Determination</u>, so long as they survive Commerce's remand and thus contribute to the basis of the CVD order.  <u>See</u> <u>Royal Thai</u>, 978 F. Supp. 2d at 1334 (describing this statutory trajectory in regards to a similar procedural background).

## II.    IMPERMISSIBLE EXPANSION OF ISSUES IN DISPUTE

Assuming arguendo that Severstal has constitutional standing, the Government contends that Severstal's cross-claim should be dismissed because the cross-claim impermissibly expands the issues in dispute.  The Government cites several cases in support of this contention.  <u>Torrington</u>

Co. v. United States, 731 F. Supp. 1073, 1075 (1990) ("[A]n intervenor is limited to the field of litigation open to the original parties, and cannot enlarge the issues tendered by or arriving out of plaintiff's bill.") (citing Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 58 (1935)); Id. (holding that an intervenor "'takes the action as it has been framed by the parties therein,' and cannot use the right of intervention to impose claims otherwise inappropriate.") (quoting Fuji Elec. Co. v. United States, 595 F. Supp. 1152, 1154 (1984)).

The Government notes that ArcelorMittal challenged the rate that Commerce assigned to Severstal as AFA under the tax deduction for exploration expenses subsidy program, whereas Severstal maintains that Commerce was not permitted to apply AFA in measuring the benefit of this subsidy as to them at all.   Although these claims relate to the same overall AFA determination, nevertheless, according to the Government, "the claims are not the same[.]"   Def.'s Mot. at 7.

In contrast, Severstal states that the claims are the same, and thus the court should not dismiss its cross-claim:  "Plaintiff's complaint challenges Commerce's AFA rate for Severstal's exploration deduction program and Severstal's cross-claim challenges the factual findings and legal conclusions on which Commerce based its determination to apply AFA to Severstal for the same exploration deduction program."  Def.-Inter.'s Opp'n at 9–10.

In its Reply, the Government reprises its impermissible expansion of issues argument by citing Parkdale Int'l v. United States, 429 F. Supp. 2d 1324, 1337–38 (2006), aff'd, 475 F.3d 1375 (Fed. Cir. 2007), which found that a cross-claim that "goes beyond the scope of [plaintiff's complaint]" "cannot be adjudicated in this proceeding."  Def.'s Reply at 7.

The Government's argument that the cross-claim impermissibly expands the issues in dispute lacks merit, because the Government fails to explain its position.  In any event, the issue

in dispute is the same in both ArcelorMittal and Severstal's complaint and cross-claim, respectively: that is whether the AFA rate assigned to Severstal is supported by substantial evidence and in accordance with law.  Thus, there is no impermissible expansion of the issues in this case.  Compare Pl.'s Compl. at 7–8, Sept. 23, 2016, ECF No. 8 with Cross-cl.

The cases cited by the Government are inapposite.  Chandler, 296 U.S. at 59–60 (affirming dismissal of counterclaim where defendant-intervenor filed counterclaim against plaintiff for infringement of a different patent that defendant had no interest in);  Fuji, 595 F. Supp. at 1154 (granting motion to strike portions of plaintiff-intervenor's complaint, because it raised matters not previously set forth in the pleadings filed between the original parties);  Torrington, 731 F. Supp. at 1076 (granting motion to strike defendant-intervenor's affirmative defenses which raised an issue of standing that was not challenged by either of the primary parties to the litigation).  Here, Severstal's cross-claim disputes the same aspect of the Final Determination which ArcelorMittal disputed in its Complaint, specifically, the AFA rate given to Severstal by Commerce.  See Final Determination; compare Compl. and Cross-cl. with Chandler, 296 U.S. at 59–60.  All parties have an interest in the Final Determination here.  Compare Compl. and Cross-cl. with Chandler, 296 U.S. at 59–60.  Severstal's cross-claim raises the same matter previously set forth in the pleadings; thus, the cross-claim does not impermissibly expand the issues in this case.  Compare Compl. and Cross-cl. with Fuji, 595 F. Supp. at 1154.  Severstal's cross-claim stays within the confines of the field of litigation between the original parties, the Government and ArcelorMittal.  Compare Compl. and Cross-cl. with Torrington, 731 F. Supp. at 1075.[10]

---

[10] The court confines its holding to the narrow question of whether the cross-claim impermissibly
(footnote continued)

## CONCLUSION

For the foregoing reasons, Severstal's cross-claim is dismissed without prejudice.


                                            /s/       Gary S. Katzmann
                                                 Gary S. Katzmann, Judge


Dated: April 25, 2017
          New York, New York

---

expands issues in dispute in this case, as framed by the parties in their filings.  In its motion to dismiss Severstal's cross-claim, the Government also contended that the case should be dismissed, because Severstal cannot brief its cross-claim, as cross-motions for judgment on the agency record are not permitted under Rule 56.2(b).  Def.'s Mot. at 7.  During oral argument, the Government clarified that Severstal is permitted to file a brief in response to a motion for judgment on the agency record.  Moreover, the Government explained that its argument was not that Rule 56.2 is a rule of substantive jurisdiction, such that the case should be dismissed because the counterclaim cannot be briefed; rather, the Government's argument is that the counterclaim should be dismissed, because the counterclaim raises new claims and expands the issues in dispute.

        The court notes that the rules do not prevent a cross-claimant from filing a responsive brief to plaintiff's motion for judgment on the agency record.  USCIT R. 56.2(d) ("Responsive briefs must be served within 60 days after the date of service of the brief of the movant.").  Even if Severstal cannot file its own motion for judgment on the agency record, it can still file its response under Rule 56.2(d) to ArcelorMittal's motion, and the court can still enter judgment in Severstal's favor:  "If the court determines that judgment should be entered in an opposing party's favor, it may enter judgment in that party's favor, notwithstanding the absence of a cross-motion."  USCIT R. 56.2(b) (emphasis added).